Barton M. PECK, Plaintiff-Appellant,

v.

MEDA-CARE AMBULANCE CORP., and Yvonne
Larsen, its Registered Agent, Defendants-
Respondents.†

Court of Appeals

*No. 89–1630. Submitted on briefs March 6, 1990.—Decided
May 15, 1990.*

(Also reported in 457 N.W.2d 538.)

†Petition to review denied.

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *John L. DeStefanis* of *Prieve, Meyer & Nestingen, S.C.* of Milwaukee.

On behalf of the defendants-respondents, the cause was submitted on the briefs of *Lynn Adelman* of *Adelman, Adelman & Murray, S.C.* of Milwaukee.

Before Moser, P.J., Sullivan and Fine, JJ.

FINE, J. There are two dispositive issues on this appeal: first, whether an attorney is *per se* liable to his or her client for violation of the rule that generally prohibits a lawyer from testifying for the client; and second, whether the forfeiture of attorney fees directed by the trial court was an appropriate exercise of judicial authority. The trial court answered these questions in the affirmative. We reverse. Additionally, the appellant contends that the respondents' position is frivolous and that, accordingly, he is entitled to "costs and reasonable

attorney's fees on this appeal" pursuant to sec. 814.025, Stats. We disagree.

## I.

Barton M. Peck brought this action seeking to recover attorney fees for legal services he performed for Meda-Care Ambulance Corp. in connection with certain labor relations matters. In their answer and counterclaim, the defendants asserted various defenses, including Peck's alleged malpractice in one of the matters because he both represented Meda-Care before a National Labor Relations Board administrative law judge, and testified before the administrative law judge in that matter on Meda-Care's behalf. The defendants moved for partial summary judgment on this defense, seeking, *inter alia,* a determination that Peck violated SCR 20.24 and SCR 20.25 of the Code of Professional Responsibility (Callaghan 1986), and that this was negligence *per se.*[1] The motion was denied by the trial court,

---

[1] On January 1, 1988, the Code of Professional Responsibility was repealed and replaced by the Rules of Professional Conduct for Attorneys. *In the Matter of the Amendment of Supreme Court Rules,* 139 Wis. 2d xiii, xv.

SCR 20.24 of the Code provided:

> **SCR 20.24 Refusing employment when the interests of the lawyer may impair his or her independent professional judgment.** (1) Except with the consent of the client after full disclosure, a lawyer may not accept employment if the exercise of his or her professional judgment on behalf of the client will be or reasonably may be affected by his or her own financial, business, property or personal interests.
> (2) A lawyer may not accept employment in contemplated or pending litigation if he or she knows or it is obvious that he or she or a lawyer in his or her firm ought to be called as a witness, except that the lawyer may undertake the employment and the lawyer or a lawyer in the firm may testify:

the Honorable Patricia S. Curley presiding.

Following judicial rotation, *see* SCR 70.23(3), this case was reassigned to the Honorable Patricia D. McMa-

 (a) If the testimony will relate solely to an uncontested matter.

 (b) If the testimony will relate solely to a matter of formality and there is no reason to believe that substantial evidence will be offered in opposition to the testimony.

 (c) If the testimony will relate solely to the nature and value of legal services rendered in the case by the lawyer or the firm to the client.

 (d) As to any matter, if refusal would work a substantial hardship on the client because of the distinctive value of the lawyer or the firm as counsel in the particular case.

Wisconsin Supreme Court Rules at 102 (Callaghan 1986).

SCR 20.25 of the Code provided:

 **SCR 20.25 Withdrawal as counsel when the lawyer becomes a witness.** (1) If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that he or she or a lawyer in his or her firm ought to be called as a witness on behalf of his or her client, the lawyer shall withdraw from the conduct of the trial and the firm, if any, may not continue representation in the trial, except that the lawyer may continue the representation and the lawyer or a lawyer in the firm may testify in the circumstances enumerated in SCR 20.24(2)(a) to (d).

 (2) If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that the lawyer or a lawyer in the firm may be called as a witness other than on behalf of the client, the lawyer may continue the representation until it is apparent that his or her testimony is or may be prejudicial to the client.

*Id.* at 102–103.

The subject matter of SCR 20.24 and SCR 20.25 of the Code is now found at SCR 20:1:16 and SCR 20:3.7 of the Rules.

SCR 20:1.16 provides, as material:

**SCR 20:1.16 Declining or Terminating Representation**
 (a) Except as stated in paragraph (c), a lawyer shall not represent a client or, where representation has commenced, shall withdraw from the representation of a client if:

666

hon, and was tried to a jury. The jury, by a vote of ten to two, found that Peck did not "fail to exercise reasonable care in representing the defendants," and awarded him $8,962.06 as the "reasonable value of the legal services" he performed for the defendants during the relevant time period. Judge McMahon set aside the verdict as "perverse," and ordered a new trial.[2] The trial court reasoned that expert testimony was necessary on the issue of whether an attorney has conformed with the applicable standards of care, and that the only expert who testified at the trial had concluded that Peck did not conform to

> (1) the representation will result in violation of the Rules of Professional Conduct or other law;
>
> . . ..
>
> (c) When ordered to do so by a tribunal, a lawyer shall continue representation notwithstanding good cause for terminating the representation.

139 Wis. 2d at lxvi–lxvii.

SCR 20:3.7 provides:

> **SCR 20:3.7 Lawyer as Witness**
>
> (a) A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness except where:
>
> (1) the testimony relates to an uncontested issue;
>
> (2) the testimony relates to the nature and value of legal services rendered in the case; or
>
> (3) disqualification of the lawyer would work substantial hardship on the client.
>
> (b) A lawyer may act as advocate in a trial in which another lawyer in the lawyer's firm is likely to be called as a witness unless precluded from doing so by Rule 1.7 or Rule 1.9.

139 Wis. 2d at lxxxv.

[2] "A verdict is perverse when the jury clearly refuses to follow the direction or instruction of the trial court upon a point of law, or where the verdict reflects highly emotional, inflammatory or immaterial considerations, or an obvious prejudgment with no attempt to be fair." *Redepenning v. Dore,* 56 Wis. 2d 129, 134, 201 N.W.2d 580, 583 (1972) (footnote omitted).

those standards because he failed to withdraw as the defendants' attorney when he knew he would have to testify on their behalf. Although Peck testified that in his opinion he fell under an exception to the rule requiring withdrawal, the trial court disregarded his testimony as "self-serving."[3]

The defendants again moved for partial summary judgment, seeking a determination "that the plaintiff violated SCR 20.25 by failing to withdraw as counsel when he knew he was going to be a witness," and that this was "negligence per se." The trial court granted the motion. Subsequently, the defendants filed a motion *in limine* seeking an order (1) preventing Peck from proving the value of legal services he performed for Meda-Care in connection with the underlying labor relations matter, (2) compelling Peck to disgorge the fees he had already been paid, and (3) requiring Peck to reimburse Meda-Care for fees it paid Peck's co-counsel at the labor relations hearing. The trial court—without regard to whether Peck's failure to withdraw as counsel caused the defendants any damage—granted the motion in part, and ordered Peck to forfeit fees for work performed after he knew he would be a witness in the labor relations case. The order also directed Peck to reimburse Meda-Care for fees paid to the lawyer who was brought in as co-counsel when Peck determined that he would have to testify.

---

[3]The trial court also held that the conduct of Peck's counsel during the course of the trial "was prejudicial to the defendants," and that what it characterized as the "deliberate confusion of issues and continual presentation of evidence known to be inadmissible[,] interfered with a fair trial of the issues." We have not been asked to review the order granting the new trial.

## II.

Summary judgment may not be granted to a party unless "there is no genuine issue as to any material fact," and the trial court is satisfied that the party "is entitled to a judgment as a matter of law." Rule 802.08(2), Stats. On review, we decide these matters *de novo. Green Spring Farms v. Kersten,* 136 Wis. 2d 304, 315–317, 401 N.W.2d 816, 820–821 (1987).

### A.

A client seeking damages from an attorney must prove not only that there was an attorney/client relationship, but, in addition: (1) that the attorney breached a duty owed to the client; (2) that the act constituting the breach caused the damages claimed; and (3) the fact and extent of damage. *Lewandowski v. Continental Casualty Co.,* 88 Wis. 2d 271, 277, 276 N.W.2d 284, 287 (1979). An attorney performing legal services for a client has a duty to exercise a reasonable degree of professional care, skill, and knowledge. *Malone v. Gerth,* 100 Wis. 166, 173, 75 N.W. 972, 974 (1898), *cited with approval in Olfe v. Gordon,* 93 Wis. 2d 173, 179–180, 286 N.W.2d 573, 576 (1980). Although the Code of Professional Responsibility established the norms of required professional conduct for attorneys, it did not, by its express terms, "undertake to define standards for civil liability of lawyers."[4] SCR 20.002, at 60. As noted in part I, the trial

---

[4]The Rules of Professional Conduct for Attorneys—which, as noted, replaced the Code of Professional Responsibility on January 1, 1988—are even more explicit:

> Violation of a rule should not give rise to a cause of action nor should it create any presumption that a legal duty has been breached.

court held on summary judgment that, as a matter of law, Peck violated SCR 20.25, and that this was negligence *per se.*

As a general rule, violation of a duty imposed by either a safety statute or regulation is negligence *per se* if "the harm inflicted was the type [that] the statute [or regulation] was designed to prevent and [if] the person injured was within the class of persons sought to be protected." *Walker v. Bignell,* 100 Wis. 2d 256, 268, 301 N.W.2d 447, 454 (1981) (statute); *Nordeen v. Hammerlund,* 132 Wis. 2d 164, 166–169, 389 N.W.2d 828, 829–830 (Ct. App. 1986) (regulation); *see also Restatement (Second) of Torts* secs. 285(a) & (b), 286 (1964). Statutes, however, "are not to be extended so as to impose any duty beyond that imposed by the common law unless such statute clearly and beyond any reasonable doubt expresses such a purpose by language that is clear, unambiguous, and peremptory." *Grube v. Moths,* 56 Wis. 2d 424, 437, 202 N.W.2d 261, 268 (1972). *See also Wells v. Chicago & North Western Transp. Co.,* 98 Wis. 2d 328, 331–333, 340–341, 296 N.W.2d 559, 560–561, 564–565 (1980).

As an evidentiary matter, lawyers are not generally prohibited from testifying for their clients. *French v. Hall,* 119 U.S. 152, 154–155 (1886); 6 Wigmore, *Evidence* sec. 1911 (Chadbourn rev. ed. 1976). *See also* Rule 906.01, Stats. ("Every person is competent to be a witness except as provided by ss. 885.16 and 885.17 or as

The rules are designed to provide guidance to lawyers and to provide a structure for regulating conduct through disciplinary agencies. They are not designed to be a basis for civil liability.

139 Wis. 2d at xxii.

otherwise provided in these rules.").[5] As an ethics proscription, the prohibition against a lawyer testifying for his or her client is thought to have germinated in 1846 when a British judge "sitting at nisi prius and citing no precedents, declared such testimony inadmissible," 6 Wigmore, *Evidence* sec. 1911, at 774, in a case where it was argued that "[t]he jury might have considerable difficulty in separating those statements which they had heard from a person as advocate, from those which they had heard from the same person as witness." *Stones v. Byron,* 4 Dowl. & L. 393, 394 (1846). The judge agreed, and condemned the attorney's testimony on behalf of his client as not "consistent with the due administration of justice." *Id.,* 4 Dowl. & L. at 395. Though the proscription was, according to Wigmore, "repudiated in the same jurisdiction within (six) years by a court in banc," 6 Wigmore, *Evidence* sec. 1911, at 774, it took root and is now viewed as "long standing." *Lawyers' Manual on Professional Conduct* sec. 61:503 (ABA/BNA April 18, 1984). Although various theoretical justifications for the proscription have been advanced after it was first imposed,[6] it was clearly designed—as *Stones* demon-

---

[5]Rule 601 of the Federal Rules of Evidence is similar:

**General Rule of Competency.** Every person is competent to be a witness except as otherwise provided in these rules. However, in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the competency of a witness shall be determined in accordance with State law.

[6]The lawyer may hurt the client's cause by being "impeachable on grounds of interest or bias," *Lawyers' Manual on Professional Conduct* sec. 61:504; *see also* SCR 20.23(2)(h), at 96; testimony by the lawyer may give an "appearance of impropriety because the public will suspect the advocate of distorting the truth to further his client's interests," *Lawyers' Manual on Pro-*

strates—"to protect systemic interests" rather than those of the client or adversary. Enker, *The Rationale of the Rule That Forbids a Lawyer To Be Advocate and Witness in the Same Case,* 1977 Am. B. Found. Res. J. 455, 465. Thus, it would stretch the ethical prohibition beyond its function to fashion from it a rule of *per se* liability of the attorney to the client. *See Walker,* 100 Wis. 2d at 268, 301 N.W.2d at 454. *Cf. Wells,* 98 Wis. 2d at 340, 296 N.W.2d at 565 (statutory requirement that owner or occupant of land abutting a railroad highway-grade crossing cut and trim brush and trees does not make the owner or occupant liable to a highway traveler injured in an accident caused by untrimmed foliage since the statute was designed "to protect the interest of the community at large rather than that of any particular class of individuals."); *Olson v. Ratzel,* 89 Wis. 2d 227, 244, 278 N.W.2d 238, 246 (Ct. App. 1979) (that a criminal statute protects against a "multiplicity of hazards" and was designed to advance a general public—rather

---

*fessional Conduct* sec. 61:504; *see also* 6 Wigmore, *Evidence* sec. 1911, at 775–776; testimony by the lawyer "prejudices the opposing party by inhibiting cross-examination of the lawyer-witness," *Lawyers' Manual on Professional Conduct* sec. 61:505; *see also* SCR 20.23(2)(h), and by giving the lawyer's arguments undue weight by lending them "testimonial credit," 6 Wigmore, *Evidence* sec. 1911, at 780. Additionally, the proscription is thought to "protect[ ] the integrity of the advocate's role as an independent and objective proponent of rational argument and preserve[ ] the distinction between advocacy and testimony." *Lawyers' Manual on Professional Conduct* sec. 61:505; *see also* SCR 20.23(2)(h). This latter reason has been described as perhaps the proscription's "most cogent rationale." *Lawyers' Manual on Professional Conduct* sec. 61:505. *Cf.* SCR 20:3.7 comment ("Combining the roles of advocate and witness can prejudice the opposing party and can involve a conflict of interest between the lawyer and client."). 139 Wis. 2d at lxxxv.

than private—interest, are factors weighing against applying the statute to define a standard of conduct in negligence cases). Since attorney-liability to a client based solely on a lawyer's testimony for the client was unknown at common law, and because Wisconsin's Code of Professional Responsibility is not only bereft of any indication that it was designed to impose such liability, but, as noted, reveals an explicit contrary intent, we may not impose such liability by decisional fiat. *See Grube,* 56 Wis. 2d at 437, 202 N.W.2d at 268. The violation of an ethics-code provision does not result in liability to a client unless a duty to that client has been breached and there is resulting damage. Furthermore, the clear language of both the Code of Professional Responsibility and its successor, the Rules of Professional Conduct for Attorneys, quoted *ante* at 669–670, prevents their use to define standards of professional care as a basis for civil liability.[7]

---

[7]In support of their view that violation of SCR 20.25 justifies imposition of *per se* liability, the trial court and the defendants rely heavily on a 1979 law review article by Charles W. Wolfram, *The Code of Professional Responsibility As a Measure of Attorney Liability in Civil Litigation,* 30 S.C.L. Rev. 281 (1979). Discussing the Code of Professional Responsibility promulgated by the American Bar Association, upon which Wisconsin's Code of Professional Responsibility was patterned, Professor Wolfram argues that the Code should be a malpractice yardstick against which an attorney's professional conduct can be measured for purposes of civil liability. He glides over the fact that, as he recognizes, the ABA "Code itself states that it does not 'undertake to define standards for civil liability of lawyers for professional conduct,' " *id.,* 30 S.C.L. Rev. at 287 (quoting *Preliminary Statement, ABA Code),* by contending that this caveat "should be read as Code neutrality, not hostility," *id.,* 30 S.C.L. Rev. at 287. Unlike law professors, whose range of intellectual inquiry is unbounded, courts may not ignore by characterization applicable

If Peck has breached his professional duty to Meda-Care, and Meda-Care was damaged as a result of that breach, Meda-Care can recover just compensation. *See Lewandowski,* 88 Wis. 2d at 277, 276 N.W.2d at 287. These are questions of fact. *See Kerkman v. Hintz,* 142 Wis. 2d 404, 418–419, 418 N.W.2d 795, 801 (1988) ("[T]he trier of fact must determine what the alleged negligent attorney did and what a reasonable or prudent attorney would have done in the same circumstance.") (interpreting *Helmbrecht v. St. Paul Ins. Co.,* 122 Wis. 2d 94, 112, 362 N.W.2d 118, 128 [1985]).[8]

## B.

Defendants seek affirmance of the trial court's judgment on the alternative ground that Peck forfeited his entitlement to fees for services rendered to Meda-Care after the date that they contend SCR 20.25(1) required his withdrawal as counsel. We disagree. Although a court may order that fees be forfeited if an attorney breaches a duty owed the client, *see Ennis v. Ennis,* 88 Wis. 2d 82, 95–96, 276 N.W.2d 341, 346 (Ct. App. 1979) (husband need not pay fees of wife's attorney when firm of attor-

language that is clear and unambiguous. In any event, even Professor Wolfram does not argue for the *per se* approach adopted by the trial court.

[8] Although these issues must be resolved without recourse to the Code of Professional Responsibility or the Rules of Professional Conduct for Attorneys, we note that Peck's affidavits in opposition to the defendants' motion for partial summary judgment and in support of his motion for reconsideration raised fact issues as to whether his testimony before the administrative law judge related to an uncontested matter, *see* SCR 20.24(2)(a), and as to whether his withdrawal as counsel would have "work[ed] a substantial hardship on the client," *see* SCR 20.24(2)(d).

ney representing wife had previously represented husband), defendants' contention rests on the same *per se* analysis of SCR 20.25(1) that we have rejected. Absent an actual breach of a duty to the client, forfeiture of fees that have been earned is unwarranted.

## III.

Peck seeks his "costs and reasonable attorney's fees on this appeal" under sec. 814.025, Stats.[9] Section 814.025, however, does not apply to appeals. *In re the Estate of Bilsie*, 100 Wis. 2d 342, 357, 302 N.W.2d 508, 517 (Ct. App. 1981). Rule 809.25(3), Stats., which covers frivolous appeals, permits the award of "costs and fees" if the court finds "an appeal or cross-appeal" to be frivolous. Rule 809.25(3)(a).[10] Its language does not permit the award of frivolous-appeal costs and fees to an appellant, and we have not found, nor has Peck directed us to, any authority to the contrary. Indeed, as a recent and highly-regarded treatise notes in connection with similar federal counterparts to Rule 809.25(3)(a), "[n]o appellant may receive an award under Appellate Rule 38 or [28

[9]Section 814.025(1), Stats., provides:

If an action or special proceeding commenced or continued by a plaintiff or a counterclaim, defense or cross complaint commenced, used or continued by a defendant is found, at any time during the proceedings or upon judgment, to be frivolous by the court, the court shall award to the successful party costs determined under s. 814.04 and reasonable attorney fees.

[10]Rule 809.25(3)(a), Stats., as amended by Wisconsin Supreme Court order, 151 Wis. 2d xvii, xviii (effective January 1, 1990), provides, in part:

If an appeal or cross-appeal is found to be frivolous by the court, the court shall award to the successful party costs, fees and reasonable attorney fees under this section.

675

U.S.C.] Section 1912 no matter how outrageous the appellee's position." *See* G. Joseph, *Sanctions: The Federal Law of Litigation Abuse* sec. 30(c)(2), at 413 (1989).[11] We reject Peck's request for frivolous-appeal costs and fees.

We remand for further proceedings consistent with this opinion.

*By the Court.*—Judgment reversed, and cause remanded.

---

[11]Rule 38 of the Federal Rules of Appellate Procedure provides:

> If a court of appeals shall determine that an appeal is frivolous, it may award just damages and single or double costs to the appellee.

28 U.S.C. sec. 1912 provides:

> Where a judgment is affirmed by the Supreme Court or a court of appeals, the court in its discretion may adjudge to the prevailing party just damages for his delay, and single or double costs.